UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAUL LELAND JOHNSON,<br><br>Defendant. | No. 2:15-cr-3-GEB<br><br>**RULING ON SENTENCING OBJECTIONS AND FINDINGS AUGMENTING PRESENTENCE REPORT** |

Defendant Paul Leland Johnson ("Defendant") objects to base offense level 20 in paragraph 25 of the Presentence Report ("PSR"), arguing it was increased under USSG § 2K1.4(a)(2)(C), which does not apply, and Defendant also objects to the obstruction of justice enhancement under USSG § 3C1.1. Def's Formal Obj. PSR ("PSR Obj.") at 1:17-22, ECF No. 120.

Defendant argues that the cross-reference in paragraph 25 to USSG § 2K1.4 is inappropriate because his false statement convictions did not "involve" arson within the meaning of USSG § 2B1.1(c)(2) and the jury did not reach a verdict on the indicted arson crime. See PSR Obj. at 3:27-5:21. He argues that even if the cross-reference is appropriate, his offense level should only have been enhanced two levels under USSG § 2K1.4(a)(4), rather than fourteen levels under USSG § 2K1.4(a)(2). See id. at 5:22-6:2. Finally, he argues the obstruction of justice enhancement is inappropriate because he "did not commit perjury during his testimony at trial within the meaning of USSG § 3C1.1." PSR Obj. at 2:20-21. The Government opposes the objections and argues the

1

court should "adopt the PSR and calculate the Guidelines at offense level 22, criminal history I, with a resulting range of 41-51 months." Resp. Obj. PSR at 7:26-8:2, ECF No. 122.

Defendant contends the false statement convictions did not "involve" arson within the meaning of USSG § 2B1.1(c)(2) because the "offenses occurred after any alleged arson occurred." PSR Obj. at 5:16-18. This is an overly constrained meaning of the term "involved." As the First Circuit states in another context:

> [Defendant]'s first resort is to the dictionary and to what he says is the "common meaning" of the word "involve": to "include" or to "contain as a part." This narrow definition of "involve" is certainly one found in dictionaries. See, e.g., The American Heritage Dictionary 921 (4th ed. 2000) (to "contain as a part; include"); Webster's Third New International Dictionary 1191 (1993) (to "have within or as part of itself," "contain," or "include").
>
> That is not, however, the only definition. To "involve" also means "to relate closely," Webster's, supra, at 1191, or to "connect closely," American Heritage, supra, at 921. This broader definition is more consistent with the "natural reading of the text." Dodd v. United States, 545 U.S. 353, 125 S.Ct. 2478, 2482, 162 L.Ed.2d 343 (2005); see also id. (citing Webster's).

United States v. McKenney, 450 F.3d 39, 42-43 (1st Cir. 2006). The false statements here were about, and related closely to, the arson.

Defendant challenges the factual underpinning of the cross-reference, arguing "the evidence is insufficient to find that Johnson's offense involved arson or property damage by use of explosives" because "[t]he jury was asked to convict [Defendant] of arson to federal property, but the jury did not

convict him." PSR Obj. at 5:19-21. The Government counters: "[Defendant] is absolutely correct that the jury was unable to reach a verdict on the charged count of arson under the reasonable doubt standard. At sentencing, however, the Court assesses the evidence under a lesser standard—in this instance, the clear and convincing standard." Resp. Obj. PSR at 2:5-7. The Government supports its argument with findings in the PSR and trial evidence. The following factual findings submitted by the government are supported by the trial record, have been augmented by the court, and are adopted as factual findings:

- Vehicle fire expert witness Russ Auker testified that there was only one cause of the Forest Service truck fire that he could not rule out: open flame ignition. Trial Transcript at 871. Open flame ignition is a match or other flame used to ignite material. Id. Auker ruled out an electrical cause, the transmission, or a mechanical cause. The expert testimony that open flame ignition caused the vehicle fire went uncontradicted by any other expert testimony.

- The video Johnson shot of the fire on his iPhone corroborates the testimony of Auker — specifically that the smoke is white at the beginning of the video, consistent with needles or other forest products burning. Transcript at 507, 529, 827.

- [United States Department of Agriculture, Forest Service law enforcement officer Vernon Voelz testified that Johnson told him "once [Johnson] observed the smoke coming from the vehicle, he went over to the vehicle, turned it off, looked for the source of the smoke. He didn't see anything underneath the vehicle initially. Went to try to find the hood latch to open the hood to see the engine compartment. That was -- took a little while. Looked back underneath the

3

vehicle and up in a crossmember, behind the engine, in the transmission area he observed burning pine needles." Transcript 228:20-22.] Johnson himself described the truck as having been sabotaged: that was what he initially told the members of the public when they came upon the scene. Transcript at 1065. Some of the pine needles stuffed into the vehicle actually survived the fire. Exhibits 528, 531. [Johnson's trial testimony evinces that "pine needles [were in the vehicle] in weird places." Transcript at 1248]

- The needles and other debris recovered from the burned truck matched the trees and shrubs that occur naturally at the vehicle burn site. Transcript at 733. This mix of recovered needles and debris did not match the vegetation growing at the Forest Service ranger station. Transcript at 761. . . .

- Paul Johnson was the only person up at the burn site. He only ever went 15-20 feet away from the truck. Transcript at 787.

- Paul Johnson behaved suspiciously during and after the fire: he didn't use the available fire extinguisher even though the members of the public suggested it to him and he said it was a good idea. Transcript at 464. Johnson didn't radio in for help even though he had been trained on using his radio. Transcript at 1368. Johnson took the time to talk with the members of the public about the snow line and camping before finally calling in the fire. Transcript at 1325-26. Johnson took three videos and three still shots of the fire with his phone while he waited for help. Transcript at 259-60. The shots are steady-handed and perfectly silent.

- Johnson told inconsistent stories about what happened to the members of the public (to whom he described the fire as sabotage), and to law enforcement officer Vern Voelz (to whom he does not mention sabotage . . .). Transcript at 228-230.

4

- The warehouse fire — another fire involving Forest Service property caused by Paul Johnson just months after the truck fire — is evidence that the truck fire was set maliciously and not by accident. Fed. R. Evid. 404(b). Chris Anthony and Doug Ferro testified regarding the circumstances of the warehouse fire, including: the flammability warnings on the linseed oil can; Johnson's admission that he looked for warning labels on the can but didn't see them; Johnson's admission that he wrapped the linseed oil can in a ball of oil-soaked rags, then wrapped those in dry rags, then placed the can on a wooden shelf on a wall in an enclosed room surrounded by boxes and papers. Transcript at 324-405. . . .

Resp. Obj. PSR at 2:10-4:13. These findings and the findings in the PSR evince under the clear and convincing evidence standard that Defendant committed the arson of his Forest Service truck. Since his false statements "involved" that arson, cross-reference to USSG § 2K1.4 (arson) is appropriate. Making such findings under a clear and convincing standard does not violate Defendant's Constitutional rights, as he alleges. "The Supreme Court has held that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge." United States v. Lynch, 437 F.3d 902, 916 (9th Cir. 2006) (citing United States v. Watts, 519 U.S. 148, 157 (1997)); see also United States v. Mercado, 474 F.3d 654, 657 (9th Cir. 2007) ("We are, therefore, satisfied that the core principle of Watts lives on and that the district court could constitutionally consider the acquitted conduct.").

Defendant also argues the base-level in paragraph 25 does not apply because his offenses did not "endanger[] . . . a place of public use," PSR Obj. at 5:22-6:2 (quoting USSG §

2K1.4(a)(2)(C)), contrary to what Probation found when responding to one of his informal objections to the PSR. The Government disagrees and supports its position with the following factual findings which are supported by the trial record, have been augmented by the court, and evince that Defendant's false statement offenses involve arson which endangered a place of public use — the Mormon Emigrant Trail:

- Johnson backed the Forest Service truck in and up against the tree line, over some dead tree limbs. Transcript at 460-61, 1097. . . .

- The fire spread beyond the truck into a 30-foot area of pine needles and grass that also caught fire. Transcript at 119. A second fire engine was responsible for putting in a containment line to keep the wildland fire from spreading. Transcript at 120. There was an immediate threat to the wildland when the first engine on scene pulled up. Transcript at 122. The second engine put in a hand line to keep the wildland fire from spreading. Transcript at 187.

- The fire, including the wildland fire, grew in size from the time the members of the public first saw it to when Johnson concluded his videotaping. Exhibits 1-6. . . .

- Mormon Emigrant Trail is a Forest Service road in the El Dorado National Forest that connects Sly Park Road to Highway 88. Transcript at 222. It is an access point for off-roading and riding areas. Transcript at 267. . . .

- Johnson himself admitted the recreational nature of Mormon Emigrant Trail, explaining that in February the public used the road to go off-roading, snow wheeling, and camping. Transcript at 1207. [Many people used the Mormon Emigrant Trail in February near where Johnson parked; and based on Johnson's "experience [he] would see a lot of people on Friday afternoons, and people

| | |
|---|---|
| 1 | randomly take a Friday off to make a three-day weekend, then hop up to the woods to grab their favorite spot" Id.] |
| 2 | |

Resp. Obj. PSR at 6:4-26. These factual findings are adopted and in conjunction with findings in the PSR evince by clear and convincing evidence that the Mormon Emigrant Trail is a place of public use that was endangered by Defendant's act of arson. Therefore, USSG § 2K1.4(a)(2)(C) properly establishes the base level of the offense is twenty.

Further, Defendant argues he "did not commit perjury during his testimony at trial within the meaning of USSG § 3C1.1," PSR Obj. at 2:20-21, because his "testimony was neither false, willful, nor material," id. at 3:9-10; see also United States v. Castro-Ponce, 770 F.3d 819, 822 (9th Cir. 2014). He further argues:

> The Sentencing Commission has emphasized that "[i]n applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." USSG §3C1.1, comment. n.1. [Defendant]'s trial testimony was the truth to the best of his memory. Any inaccuracy was due to confusion, mistake, or faulty memory—not willfulness.

PSR Obj. at 3:11-17.

The Government responds:

> At trial, as correctly noted in the PSR in paragraphs 19-21, Johnson testified that he lacked the mens rea required to convict him on Counts 3-5, the false statement counts. If the jury were to have believed his testimony, the jury could not have convicted him on those counts. In more than one place in his testimony, Johnson attempted to convince the jury that he lacked the mens rea required for

7

>conviction. First, Johnson answered in the negative in response to a catch-all question posed to him by defense counsel, incorporating all of the elements of making a false statement: "[D]is you knowingly and willfully make any false statements in any form knowing that they would contain materially false, fictitious, or fraudulent information as alleged in Counts Three through Five?" Transcript at 1311. Johnson responded, "no." Transcript at 1311.
>
>Johnson then defended that answer on cross-examination, explaining to the jury that "at the time on February 3rd I believed what I wrote to be true and correct, as I wrote, to the best of my knowledge." Transcript at 1331. But the jury rejected that claimed mens rea, convicting Johnson of the false statement made in that written statement. Johnson also claimed he did not knowingly make the second false statement, testifying "[n]o, I did not know that it was not true. It was something that had been called into question from the investigators." Transcript at 1335. The jury also convicted Johnson of this second false statement, rejecting his claim that he lacked the knowledge element of the offense.
>
>The PSR correctly finds that Johnson committed perjury with regard to his mens rea, and applies the two-point adjustment under U.S.S.G. § 3C1., comment n. 4(B). Johnson's objection to this adjustment should be overruled.

Resp. Obj. PSR at 7:6–25. The government is correct. Defendant's testimony was in the above respects false, as the jury found. The falsity of that testimony was not due to a faulty memory, as the jury rejected such a rationale in convicting Defendant. The testimony was material since if it was believed it had the tendency to exculpate Defendant.

Lastly, the third to the last sentence in paragraph nine of the PSR is changed as follows: the words "Johnson's truck then started on fire" are struck, and "Around that time, a fire

8

was started in the truck" substituted in their place.

Defendant's objections to the PSR are overruled. Further, this order shall be appended "to any copy of the presentence report made available to the Bureau of Prisons." Fed. R. Crim. P. 32(i)(3)(C).

Dated: February 23, 2018

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge