UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:15-CR-00003-KJM |
| Plaintiff, | |
| v. | ORDER |
| PAUL JOHNSON, | |
| Defendant. | |

Defendant brings an emergency motion seeking compassionate release and a reduction of his sentence to time served under 18 U.S.C. § 3582(c)(1)(A)(i). Originally he brought the motion in an effort to avoid being transferred to a new facility, but he was transferred before the court was able to decide the motion. Defendant has confirmed for the court that he is not withdrawing his motion; rather he continues to seek release from the federal Bureau of Prisons (BOP) where he remains housed, albeit at a different facility. He seeks release in light of the increased risks to his health he says the coronavirus ("COVID-19") pandemic poses to him as someone who is in custody, with his particular health issues. For the following reasons, the court cannot find on this record that compelling reasons exist to grant defendant's motion.

I.   BACKGROUND

It cannot reasonably be disputed that "[d]ue to the novel coronavirus pandemic, we are in extraordinary times." *United States v. Daniels*, No. 19-CR-00709-LHK (NC), 2020 WL

1

1815342, at *2 (N.D. Cal. Apr. 9, 2020) (internal quotation marks and citation omitted).  The crisis triggered by the virus is global, leading to many emergency declarations, including a presidentially-declared national emergency.  *See* Proclamation No. 9994, 85 Fed. Reg. 15,337 (Mar. 13, 2020).

As the coronavirus has spread throughout the United States, it has reached jails and correctional facilities as well.  *See, e.g., Daniels*, 2020 WL 1815342, at *3 (citing Timothy Williams, et al., *Jails are Petri Dishes*, N.Y. Times (Mar. 31, 2020)[1]).  As of May 5, 2020, the BOP reported 2,066 federal inmates and 359 BOP staff diagnosed with the virus and 41 inmate deaths.[2]  According to BOP counsel, there have not been any reported cases at defendant's current facility, FCI Mendota.  Opp'n at 3.  Responding to the risks in the federal prisons, Attorney General William Barr has issued two memoranda to the BOP Director, directing BOP to maximize the release of inmates to home confinement at institutions most affected by COVID-19, by making individualized determinations balancing inmates' vulnerability to infection and public safety.  *See* Mem. from U.S. Att'y Gen. William Barr to Director of Bureau of Prisons (April 3, 2020) (second memorandum supplementing original after passage of the CARES Act).[3]

Defendant Paul Johnson was convicted of two counts of making false statements within the jurisdiction of the U.S. Forest Service and U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives, respectively, regarding a vehicle fire in the El Dorado National Forest, in violation of 18 U.S.C. § 1001.  Minutes for Sentencing, ECF No. 131; Indictment, ECF No. 1.  On February 23, 2018, the previously assigned district judge sentenced Johnson to 41 months

---

[1] https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html.

[2] As have other courts, this court takes judicial notice of the information presented by the BOP at https://www.bop.gov/coronavirus/.  *See Daniels*, 2020 WL 1815342, at *3.  That information does not report any infections or deaths at the federal correctional institutions at Taft or Mendota.

[3] https://www.justice.gov/file/1266661/download.

imprisonment and 24 months supervised release. *Id.* His current release date is January 18, 2021. Mot., ECF No. 143, at 7.

Defendant is 31 years old, and was recently transferred from Taft Correctional Institution ("FCI Taft"), a privately-run prison which was scheduled to close at the end of April 2020, to FCI Mendota. Mot. at 8 (citing Ex. 1, ECF No. 143-1 (Letter to Director of Federal Bureau of Prisons from Congressman Kevin McCarthy and Senator Dianne Feinstein); Mot., Ex. 5, ECF No. 143-5 (Memorandum from Taft Correctional Institution to Camp Inmate Population); Renewed Mot., ECF No. 153, at 6.

Defendant originally filed the instant motion for compassionate release on Sunday, April 12, 2020. Mot. A day later, on April 13, defendant filed a related motion for a temporary restraining order (TRO) barring FCI Taft from transferring defendant to another institution before the court could rule on his motion to reduce sentence. Mot. for TRO, ECF No. 146. The court held a status conference on the matter that afternoon, ECF No. 149, and allowed the government to file an expedited opposition to both motions, ECF No. 150, which it did, ECF No. 151. The government notified the court early on the morning of April 14, 2020 that defendant had left FCI Taft on an early morning transport. The court then denied the request for a TRO as moot, and allowed defendant to notify the court whether he intended to maintain the original motion after his transfer. Order, ECF No. 152. Defendant responded to the court's order explaining that he intended to maintain his original motion before the court and providing supplemental argument. Renewed Mot. The government replied. Gov't Response, ECF No. 155. The court resolves the motion for compassionate release below.

II.     LEGAL STANDARD

Defendant brings his motion for release under 18 U.S.C. § 3582(c)(1)(A)(i), which allows a court to modify a sentence under certain circumstances. Under the current version of the statute, a motion for modification may be made by either the Director of the BOP or by a defendant "after the defendant has fully exhausted all administrative rights to appeal[.]" 18 U.S.C. § 3582(c)(1)(A).

In deciding whether to modify a sentence and grant compassionate release following exhaustion, as relevant here, a district court engages in a two-step process. First, it must consider the familiar 18 U.S.C. § 3553(a) factors applicable at the original sentencing, to the extent they remain applicable at the time a motion is brought. 18 U.S.C. § 3582(c)(1)(A). Second, the court must find that "extraordinary and compelling reasons warrant such a reduction." *Id.* An alternative provision provides for consideration of a motion by a defendant who is 70 years or older, and so is not applicable here. 18 U.S.C. § 3582(c)(1)(A)(ii).

The Sentencing Commission has addressed what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody in a policy statement. *See* U.S.S.G. § 1B1.13. Defendant argues the policy statement is not binding as it precedes adoption of the First Step Act, which amended § 3582 on December 21, 2018 and provided for defendants' ability to bring this motion in the first place. Mot. at 12 (citing, *inter alia*, *United States v. Mondaca*, No. 89-CR-0655 DMS, 2020 WL 1029024 (S.D. Cal. Mar. 3, 2020) ("[A] growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release[.]"). The government argues the policy statement is still binding, citing *Dillon v. United States*, 560 U.S. 817, 827 (2010). Opp'n at 10.

Since passage of the First Step Act, many courts have held that the policy-statement provision, previously applicable to § 3582, "no longer fits with the statute," *United States v. Cantu,* No. 1:05-CR-458-1, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019), because it has not been amended since the First Step Act to reflect that both defendants and the BOP may move for compassionate release. *See United States v. Allen*, No. 2:17-CR-0229-TOR-12, 2019, WL 6529113, at *2 (E.D. Wash. Dec. 4, 2019); *United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (noting "[i]n at least four judicial districts, courts have determined that the First Step Act signaled an intent from Congress that district courts may now consider whether extraordinary and compelling reasons for compassionate release exist other than those delineated in U.S.S.G. § 1B1.13 n.1"). Nevertheless, courts in this district often "turn[] to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a reduction in sentence." *United States v. Esparza*, No. 1:07-CR-00294-BLW,

2020 WL 1696084, at *2 n.2 (D. Idaho Apr. 7, 2020) (quoting *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *2 (E.D. Wash. March 31, 2020)); *see also Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838, at *8 (W.D. Wash. Apr. 10, 2020) ("In the absence of contrary controlling authority, and given the limited statutory exceptions to the general rule of the finality of judgments, this court will continue to follow the guidance of the Sentencing Commission's policy statement limiting the scope of "extraordinary and compelling reasons" that warrant compassionate release under § 3582(c)(1)." (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010))); *but see United States v. Rodriguez*, No. 17-cr-00021-WHO-1, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019) ("This court follows the growing number of district courts that have concluded that, in the absence of applicable policy statements, courts can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant compassionate release."); *United States v. Chan*, No. 96-cr-00094-JSW-13, 2020 WL 1527895, at *4–5 (N.D. Cal. March 31, 2020) (noting split in authority and following *Rodriguez*).

The court refers to the Sentencing Commission's policy statement for guidance, but need not determine here whether it is binding in this context. The relevant policy statement outlines four categories of circumstances that may constitute 'extraordinary and compelling reasons' for a sentence reduction:

> (1) the defendant suffers from a medical condition that is terminal or substantially diminishes the defendant's ability to provide self-care in a correctional environment; (2) the defendant is at least 65 years old, is experiencing a serious deterioration in health due to the aging process, and has served at least 10 years or 75% of his or her term of imprisonment; (3) family circumstances involving the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner; or (4) other reasons, other than or in combination with the other listed circumstances, that are extraordinary and compelling."

*United States v. Allen*, No. 2:17-CR-0229-TOR-12, 2019 WL 6529113, at *2 (E.D. Wash. Dec. 4, 2019) (citing U.S.S.G. § 1B1.13, Application Note 1).

III.  DISCUSSION

    A.  Exhaustion

As a threshold matter, defendant must meet the exhaustion requirements of § 3582 before the court can consider motion for compassionate release.  Though it argues defendant had not met the exhaustion requirements at the time of its opposition, the government suggests defendant would have met the exhaustion requirement once thirty days has passed since he filed his request with BOP, on May 1, 2020.  Gov't Not. at 1.  Generally, exhaustion requires defendant seek compassionate release with the BOP and exhaust all appeals or show that at least 30 days have lapsed and BOP has failed to respond to defendant's request, whichever is earlier. *See United States v. Miller*, No. 2:16-CR-00269-BLW, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).  Here, defendant originally filed his request for release to home detention to avoid transfer to a new facility on April 4, 2020, using a form evidently available to him at FCI Taft; he directed his request to "Steven Merlak, Warden."  Mot. at 9–10; Mot., Ex. 4, ECF No. 143-4, at 1.  On April 6, 2020, defendant received a copy of a blanket memo response addressed to "Camp Inmate Population" from "D. Patrick, Executive Assistant/Grievance Coordinator," saying that "individual responses will not be provided, nor will any future requests regarding this same matter be addressed"; rather "due to the current decision by the Bureau of Prisons to close the facility and the subsequent transfer of all inmates, each of you will have to make this request at your new facility."  Mot., Ex. 5 at 1.  The response also notes that FCI Taft staff had "not been provided guidance by [] BOP regarding the Attorney General's Memorandums involving any revised procedures for an inmate's placement on Home Confinement.  Therefore current procedures will remain in place."  *Id.*

In its response to plaintiff's renewing his motion for release, the government argued defendant had not satisfied the exhaustion requirement for two reasons: (1) because he had not re-filed his request at his new facility and (2) as of the date of the government's response, it had not been thirty days since defendant filed his original request with the BOP.  Gov't Resp. at 2–3.

6

1        As for the government's second argument, it is unclear whether the thirty-day timeline has "lapsed" if the BOP has responded to defendant's request, as it has done here. The text of § 3582(c)(1) is not a model of clarity; it provides that defendant may file a motion with the court after "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). A sister court explained the confusion over the phrase "or the lapse of 30 days from the receipt of such a request by the warden" in *United States v. Weidenhamer*, No. CR-16-01072-001-PHX-ROS, 2019 WL 6050264 (D. Ariz. Nov. 8, 2019), and concluded "the better reading is to require administrative exhaustion if a warden acts on a request within 30 days," reasoning that Congress intended to allow defendants to file a motion with the court without pursuing administrative appeals only if the BOP failed to respond to a request promptly. *Id* at *4. ("If the warden acts on that request in a timely matter, it is appropriate to require a defendant to pursue an administrative appeal."). There is no binding authority on the issue, however. The government reads the statute to mean defendant may file a motion thirty days after making his request with BOP, regardless of whether BOP responds to the request or not. *See* Gov't Response at 3 ("Only after 30 days from the BOP's receipt of [defendant's request made on April 4, 2020] can this Court consider defendant's motion.").

The court need not resolve any question of statutory construction here, because as of the date of this order, 30 days have passed since the date defendant administratively filed his reduction in sentence request. Gov't Response at 1–2 ("Thirty days from the date Johnson administratively filed his reduction in sentence request is May 4, 2020."). Because the government effectively concedes defendant has met the exhaustion requirement, the court assumes defendant has exhausted without reaching the question of how to interpret the statutory text of § 3582(c)(1), and proceeds to consider the merits of the motion below.

B.   "Extraordinary and Compelling Reasons"

Defendant argues the COVID-19 pandemic constitutes a compelling reason for his release. *See* Mot. at 14. Specifically, he contends he is "at increased risk of heart and respiratory

7

complications from COVID-19" because he "has a congenital heart defect, was a cigar and pipe tobacco smoker, and has several years of smoke and fume exposure from wildland firefighting." *Id.* at 16 (citing Mot., Ex. 4, ECF No. 143-4, at 2–3 (defendant's Inmate Request to Staff explaining same); Adult Congenital Heart Association, *COVID-19 (Coronavirus): What It Means for Adults with Congenital Heart Disease*[4]); PSR ¶¶ 52, 60–63, ECF No. 134 (sealed) (stating defendant's mother advised he was born with a severe heart defect "which he grew out of at age 13")).  The court notes defendant has not provided verified medical records, or verified his own statements, but the short timeline on which this motion was made may explain the somewhat thin evidentiary record provided.

Factually, the government challenges only defendant's claim that he has a congenital heart condition, pointing out that the presentencing report states defendant's mother reports he grew out of the condition at age thirteen.  Opp'n at 2 (citing PSR ¶ 52).  In his April 4 request to BOP, defendant himself says he "had an A-V Malformation and Valvular stenosis,"[5] suggesting these are conditions he had in the past.  Mot., Ex. 4 at 3.  He also references his smoke inhalation from six years of wildland firefighting and a family history of lung cancer, diabetes and sleep apnea, without saying he himself has those conditions.  *Id.*

The Centers for Disease Control and Prevention (CDC) recognizes that "serious heart conditions" "particularly if not well controlled" and immunocompromise due to factors including smoking may render an individual at a higher risk for severe illness from COVID-19.

---

[4] https://www.achaheart.org/your-heart/health-information/covid-19-coronavirus-what-it-means-for-adults-with-congenital-heart-disease/.

[5] An "A-V Malformation" appears to reference a condition called arteriovenous malformation, "an abnormal tangle of blood vessels connecting arteries and veins, which disrupts normal blood flow and oxygen circulation." *Arteriovenous malformation*, Mayo Clinic (May 17, 2019), https://www.mayoclinic.org/diseases-conditions/arteriovenous-malformation/symptoms-causes/syc-20350544.  "Valvular stenosis" is a heart disease condition related to the stiffening of the heart valve tissues.  *Valve Disease Types*, Cleveland Clinic (last updated July 19, 2019), https://my.clevelandclinic.org/health/diseases/17600-valve-disease-types.

CDC, *Information for Healthcare Professionals: COVID-19 and Underlying Conditions*.[6] Applicable CDC Guidance for Correctional & Detention Facilities notes that the circumstances in these types of facilities present "unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors," with the observation that "[c]onsistent application of specific preparation, prevention, and management measures can help reduce the risk of transmission and severe disease from COVID-19." CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (March 23, 2020)[7]. Some courts have also concluded, not unreasonably, that "[t]he danger of COVID-19 to high-risk individuals who are imprisoned is likely much greater than to those who are free to take their own protective measures." *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020) (footnote omitted).

Nonetheless, assuming without deciding that an increased risk of life-threatening complications from COVID-19 is an "extraordinary and compelling reason" warranting compassionate release under the relevant policy statement, on the record before it, the court concludes that defendant has not shown his health condition is so serious as to put him at great risk in the face of potential exposure to COVID-19, so as to warrant granting his motion for compassionate release. He is young, at 31 years of age, which does not eliminate risk, but his age does not correspond with the CDC's identification of persons 65 years or older. Although younger persons with serious health conditions can be high risk, defendant's self-reported history of smoking, occupational smoke inhalation and a heart condition, without more, also does not

---

[6] The CDC also lists the following underlying medical conditions as increased risk factors: chronic lung disease or moderate to severe asthma; immunocompromising factors such as cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications; severe obesity (body mass index [BMI] of 40 or higher); diabetes; chronic kidney disease undergoing dialysis; and liver disease. CDC, *Information for Healthcare Professionals: COVID-19 and Underlying Conditions* (last updated April 6, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/underlying-conditions.html.

[7] https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf.

bring him within the ambit of the CDC's high-risk criteria, and there is insufficient evidence to conclude his heart condition is currently sufficiently serious. Thus on this record, the court cannot find that defendant faces an "unprecedented, extremely serious health risk posed by continued detention, exacerbated by [defendant's] health conditions," *Daniels*, 2020 WL 1815342, at *4, warranting a reduction in defendant's sentence to time served. *Cf. Gonzalez*, 2020 WL 1536155, at *2–3 (finding compassionate release warranted under the "other reasons" category of USSG § 1B1.13, cmt. n.1(D) based on the COVID-19 pandemic paired with elderly defendant's chronic obstructive pulmonary disease including significant emphysema).

Given this conclusion, the court need not reach the balance of the § 3582(c) analysis.

IV.   CONCLUSION

Defendant's Emergency Motion for Reduction of Sentence, ECF No. 143, is DENIED.

This order resolves ECF No. 143.

IT IS SO ORDERED.

DATED: May 7, 2020.

CHIEF UNITED STATES DISTRICT JUDGE

10